# UNITED STATES BANKRUPTCY COURT

### EASTERN DISTRICT OF VIRGINIA
### NORFOLK DIVISION

| | |
|---|---|
| In re: ) | Case No.  06-71505-SCS |
| ) | |
| BASELINE SPORTS, INC., ) | |
| ) | |
| *Debtor.* ) | Chapter 11 |
| ) | |
| ) | |
| SUNTRUST BANK, ) | APN 07-07105-SCS |
| ) | |
| *Plaintiff,* ) | |
| v. ) | |
| ) | |
| GARY L. ROBERSON, ) | |
| DAVID G. BARNES, ) | |
| BASELINE SPORTS, INC., ) | |
| BASELINE LICENSING GROUP, LLC, ) | |
| ) | |
| *Defendants.* ) | |

## MEMORANDUM OPINION

This matter came before the Court upon the Motions to Dismiss SunTrust Bank's

("SunTrust" or the "Bank") Complaint initiating an adversary proceeding against Baseline

Sports, Inc. (the "Debtor"), a commercial debtor before this Court; Baseline Licensing Group,

LLC, a business entity related to the Debtor; and Gary L. Roberson ("Roberson") and David G.

Barnes ("Barnes"), principals of both Baseline Sports and Baseline Licensing.[1]  As explained in

this Opinion, the Court concludes that it has subject matter jurisdiction to interpret its own order

approving the settlement between SunTrust Bank and the Debtor, Baseline Licensing, Fan's

Choice, Inc., Roberson, and Barnes to determine whether Federal Rule of Civil Procedure 60, as

---

[1] Baseline Licensing, LLC, is engaged in the business of manufacturing and selling sports-themed housewares. Gary
L. Roberson and David G. Barnes are principals of Baseline Licensing. As part of the settlement between SunTrust
Bank, the Debtor, Baseline Licensing, Fan's Choice, Inc., Roberson, and Barnes, the Debtor transferred and
assigned all of its personal property to Baseline Licensing.

made applicable to bankruptcy proceedings through Federal Rule of Bankruptcy Procedure 9024, acts to preclude the claims SunTrust asserts in its Complaint. However, the Court concludes that it is without subject matter jurisdiction to adjudicate the substantive merits of the state law causes of action alleged in SunTrust's Complaint. Accordingly, the Court dismisses SunTrust's Complaint under Federal Rule of Civil Procedure 12(b)(1) and Federal Rule of Civil Procedure 12(h)(3), as made applicable to bankruptcy adversary proceedings through Federal Rule of Bankruptcy Procedure 7012(b), due to lack of jurisdiction over the subject matter. *See* Fed. R. Bankr. P. 7012(b); Fed. R. Civ. P. 12(b)(1); Fed. R. Civ. P. 12(h)(3). Upon consideration of the pleadings and arguments of the parties, the Court makes the following findings of fact and conclusions of law.

## I. Background and Factual Findings

a. *Procedural History and Lending Relationship Between the Debtor and SunTrust*

On October 16, 2006, Baseline Sports, Inc., filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code, for which the Court entered an Order for Relief. The Debtor is now a defunct entity, without assets, which currently awaits confirmation of its Chapter 11 Plan of Liquidation. As described herein, SunTrust Bank entered into a settlement agreement with Baseline Sports, Baseline Licensing Group, Barnes, and Roberson (collectively the "Defendants"), and Fan's Choice, Inc., which is not a party to this action. As part of that agreement, SunTrust was granted relief from the automatic stay to exercise any rights it may have in the Debtor's collateral, among other things, and the Debtor was released from any obligations it might have as a result of its relationship with SunTrust, thus allowing SunTrust to liquidate the assets of Baseline Sports upon which it had a pre-petition lien. Accordingly,

SunTrust will not receive any payment under Baseline Sports's Plan of Liquidation and has no right to vote on the Plan's confirmation.

Baseline Sports conducted business as a wholesaler of sporting and gaming related merchandise. Gary L. Roberson and David G. Barnes acted as directors and officers and were shareholders of Baseline Sports.[2] In order to facilitate its business operations, Baseline Sports engaged in a financing arrangement with SunTrust Bank.  In 2002, this financing relationship led to an agreement in which SunTrust renewed a Credit Line Loan which was limited to the lesser of $1,125,000 or the value of Baseline Sports's current eligible accounts receivable. On January 24, 2002, November 5, 2002, and April 15, 2004, SunTrust extended additional loans to Baseline Sports, and Baseline Sports made, executed, and delivered Notes to SunTrust.  Baseline Sports granted a security interest in favor of SunTrust under a Security Agreement dated April 23, 2003, providing SunTrust with a first priority security interest in all of Baseline Sports's assets, including its accounts receivable. Additionally, both Roberson and Barnes personally guaranteed payment of these loans by agreements dated May 21, 2000, and January 27, 1999, respectively.

The Credit Line Loan was due upon demand, and upon maturation on February 28, 2005, was not renewed. Baseline Sports became out of compliance with the lending agreement associated with the Credit Line Loan, which SunTrust alleges put Baseline Sports in a position of material default of its agreement. Accordingly, the Bank declared that the loan was in default.

Following the alleged default under the lending agreement, SunTrust filed a Complaint and Petition for Pretrial Seizure against Baseline Sports in the Circuit Court for the City of Norfolk, Virginia, on October 3, 2006.  In its state court complaint, the Bank alleged Baseline Sports owed it $1,029,316.43 as of October 2, 2006.  Prior to the entry of an order permitting

---

[2] The Court notes that Roberson and Barnes remain directors, officers, and shareholders of the Debtor although the Debtor no longer functions as an active business entity and no longer conducts business operations.

SunTrust to exercise any rights it might have in Baseline Sports's assets under the terms of the Note and Security Agreement, Baseline Sports filed its Chapter 11 petition for relief in this Court on October 16, 2006.

Soon after the Debtor filed its petition for Chapter 11 relief, the Bank filed its first Motion for Relief from the Automatic Stay on October 18, 2006 (the "First Motion for Relief"). The following day, the Court held a preliminary hearing on the Bank's Motion for Relief. At the conclusion of the hearing, the Court ordered that a Final Hearing on SunTrust's Motion for Relief be held and additionally ordered, among other things, that the Debtor would not be allowed to use any cash collateral without further order from the Court. Subsequent to the preliminary hearing, the Court approved an application to appoint counsel to represent the Official Committee of Unsecured Creditors (the "Committee") on October 27, 2006. The Court held a Final Hearing on the Bank's First Motion for Relief on October 31, 2006. Ultimately, SunTrust's First Motion for Relief culminated in an Order by this Court permitting the Bank to exercise its rights in the Debtor's inventory and denying the portions of the Bank's motion which sought relief as to other assets of the Debtor.

On December 19, 2006, SunTrust filed a second Motion for Relief from the Automatic Stay seeking to exercise any rights it had in the Debtor's accounts receivable (the "Second Motion for Relief"). Both the Debtor and the Committee filed responses to SunTrust's Second Motion for Relief admitting certain allegations, denying others, and requesting the Court deny SunTrust's Second Motion for Relief. The Court held a preliminary hearing on the Bank's second motion on January 11, 2007, at which it granted relief to SunTrust as to the Debtor's cash on deposit, which was being held by the Bank, and set a final hearing on the Second Motion for

Relief which was held on February 14, 2007.  An Order was entered on January 17, 2007, granting SunTrust relief with regard to the cash held on deposit.

Prior to the final hearing on SunTrust's Second Motion for Relief, the Debtor filed a Motion to Approve Settlement between the Debtor; Debtor-affiliated entities Baseline Licensing Group and Fan's Choice; and the principals of the Debtor, Baseline Licensing, and Fan's Choice, Gary Roberson and David Barnes. The Debtor filed a separate motion with the Court seeking the Court's approval of a settlement agreement reached with the Committee.  The Court held a final hearing on SunTrust's Second Motion for Relief and hearings on the Motions to Approve the proposed settlements submitted to the Court. The Court approved both settlements and continued the Final Hearing on the Bank's Second Motion for Relief.[3]  The settlement between SunTrust and Baseline Sports, Baseline Licensing Group, Fan's Choice, Barnes, and Roberson was approved by an order of the Court entered on February 20, 2007 (the "SunTrust Settlement"). The Court also entered a separate order approving the settlement between the Debtor and the Committee on the same day (the "Committee Settlement").[4]  The continued final hearing on SunTrust's Second Motion for Relief was held on April 5, 2007, at which the parties represented that the remaining issues of the Second Motion for Relief were resolved; an order were entered dismissing the remainder of the Second Motion for Relief without prejudice on May 15, 2007.

---

[3] The Committee filed a Motion to Convert the case to one under Chapter 7, which was opposed by SunTrust. The Court permitted the Committee to withdraw this motion at the February 14, 2007, hearings.

[4] The most salient terms of the Committee Settlement for the purposes of this Memorandum Opinion include: a promissory note for $200,000 at 5% interest delivered by Baseline Licensing Group and Fan's Choice; a yearly payment by Barnes and Roberson of any and all non-salary and non-reimbursable expense distributions received by either Barnes or Roberson from Baseline Licensing Group and Fan's Choice up to, but not exceeding, $50,000 for a period of four years; the Committee and the bankruptcy estate will release all claims which it has or could assert, directly or derivatively, against Baseline Licensing Group, Fan's Choice, Barnes, or Roberson; and the Committee and the bankruptcy estate will release all claims, if any, which they have against SunTrust.

b. *The Current Status of Baseline Sports*

Since March 2007, the Debtor has ceased to operate as an ongoing concern. Indeed, all of the Debtor in Possession Reports filed with the Court since March 2007 indicate that the Debtor no longer operates, has miniscule to zero income and expenses, and has virtually no assets, including funds in its Debtor in Possession account. For all intents and purposes, the Debtor is a defunct entity.

c. *Events Leading to the Settlement of SunTrust's Second Motion for Relief and SunTrust's Adversary Complaint*

As detailed above, SunTrust sought to exercise any rights it may have had in Baseline Sports's collateral, including accounts receivable, by virtue of the Security Agreement which Baseline Sports granted under the parties' lending arrangement. In its Complaint, the Bank asserts that Baseline Sports, Baseline Licensing, and the Debtor's principals made certain representations as to the value of the accounts receivable, and based upon those representations, it entered into the SunTrust Settlement, which ultimately lead the Bank to agree to dismiss its Second Motion for Relief. As part of its agreement to enter into the SunTrust Settlement with the Debtor, the Debtor-affiliated entities, Barnes, and Roberson, SunTrust was granted relief from the automatic stay to recover Baseline Sports's accounts receivable.[5]  *See* Compl. ¶ 36; Third Order Granting Partial Relief from the Automatic Stay, Docket Entry 120, entered Feb. 14, 2007.

The Bank asserts that Baseline Sports made four separate statements representing the value and collectability of the accounts receivable.  The first alleged representation was made on

---

[5] Unlike the other terms of the SunTrust Settlement, such as the $190,000 cash payment to the Bank, and the $130,000 note, the transfer of, or the relief as to, the accounts receivable is never specifically mentioned in the SunTrust Settlement. *See* SunTrust Settlement. Counsel for SunTrust stated to the Court at the hearing held on April 16, 2008, that the reference to "collateral" in paragraph 6 of the SunTrust Settlement encompasses Baseline Sports's accounts receivable. *See* Transcript of hearing held April 16, 2008, at 26:1–26:22 (hereinafter Tr.).  While the Court remains perplexed by the fact that the accounts receivable, which form a critical component of the SunTrust Settlement, are never specifically mentioned within this Settlement, the Court takes no position on whether this affects SunTrust's substantive claims against the Defendants and makes no finding of fact as to whether the accounts receivable are encompassed in the "collateral" mentioned in paragraph 6 of the SunTrust Settlement Agreement.

September 29, 2006, based on an accounts receivable listing provided by Baseline Sports stating

the value of the accounts as $723,517.64 (the "September aging report"). The next representation

regarding the accounts receivable was made by Roberson at the preliminary hearing on

SunTrust's First Motion for Relief on October 19, 2006, at which he stated that he believed that

$600,000 of the accounts receivable could be collected. The next representation concerning the

value of the accounts receivable was provided in Schedule B filed with the Court on November

9, 2006, and signed by Roberson in his capacity as the Debtor Designee. There, the accounts

receivable were listed with a value of $712,839.46. The fourth representation of the value of the

accounts receivable was provided in an accounts receivable report supplied to SunTrust by

Baseline Sports on November 27, 2006, listing the value of the accounts receivable at

$704,202.30 (the "November aging report"). Baseline Sports, in its Answer to the Second

Motion for Relief, asserted that the September and November aging reports were true copies.

SunTrust alleges that it entered into the SunTrust Settlement relying upon the values of

accounts receivable as stated by Baseline Sports in the September and November aging reports,

the valuation of the accounts receivable as listed in the Debtor's Schedule B, and the testimony

provided by Roberson as to the collectability of the accounts receivable at the preliminary

hearing on the First Motion for Relief.  Under the terms of the SunTrust Settlement, SunTrust

states that:

> In exchange for a release of liability under the Loans, including the Roberson
> Guaranty Agreement and the Barnes Guaranty Agreement, SunTrust agreed that it
> would receive $190,000 in cash, a note in the amount of $120,000 and recovery of
> the Receivables, other than the Fan's Choice receivables and amounts owing by
> Baseline Licensing.[6]

---

[6] The SunTrust Settlement states that Baseline Licensing, Barnes, and Roberson were to pay SunTrust $130,000 while SunTrust's Complaint lists that amount as $120,000. The Court assumes that the $130,000 is the correct amount. Further, the Court takes no position as to the terms of the SunTrust Settlement and only provides SunTrust's allegations regarding the terms of the Settlement to the extent it is necessary to determine whether this

Compl. ¶ 36. SunTrust asserts that it accepted a discounted payment on its loans and agreed to release the Debtor, Baseline Licensing, Barnes, Roberson, and Fan's Choice from any liability they may have under the Notes, and therefore "the amount and value of the Receivables comprised a material part of what SunTrust bargained to receive in the settlement." Compl. ¶ 38.

Subsequent to the Court's approval of the settlement, at SunTrust's request, Baseline Sports provided an updated listing of the accounts receivable, which listed the value as $356,188.55, taking into account the release of the Baseline Licensing and Fan's Choice receivables. SunTrust attempted to collect on these receivables beginning in March 2007 but with little success and through the time of the filing of the Complaint had only collected $8,509.24 of the outstanding receivables.

SunTrust alleges that:

Because of: (1) the non-existence of certain of the Receivables, (2) lack of supporting documentation, (3) inaccurate information, (4) statements from account debtors that certain receivables were paid previously and (5) patent uncollectability of certain Receivables, the amount and value of the Receivables is substantially less than the amount and value of the Receivables as represented by Roberson, Barnes and Baseline Sports to this Court and to SunTrust.

Compl. ¶ 48.

---

Court has subject matter jurisdiction to rule on the substance of SunTrust's claims. The SunTrust Settlement includes the following:

1. Baseline Licensing, Roberson and Barnes agree to pay to SunTrust the sum of $190,000 (the "Payment") within 15 days after the order approving this settlement becomes final and non-appealable.

2. Baseline Licensing, Roberson and Barnes agree to pay to SunTrust the sum of $130,000 and such obligation will be evidenced by a promissory note (the "Settlement Note").

SunTrust Settlement ¶ 1–2.

As stated above, the SunTrust Settlement does not specifically mention the accounts receivable or the order granting relief from stay as to the accounts receivable. *See supra* note 5.

On January 10, 2008, SunTrust filed an objection to the Debtor's Disclosure Statement, which noted that it had filed its Complaint subsequent to the filing of the Disclosure Statement. The Court held a hearing on the Debtor's Disclosure Statement on January 17, 2008, at which it approved the Disclosure Statement, subject to the Debtor including a statement regarding SunTrust's Complaint and the nature of the relief sought therein. Further, the confirmation hearing was continued generally so the Court could ascertain the nature of the relief sought by SunTrust in its Complaint.

d. *SunTrust's Causes of Action*

SunTrust alleges a total of five causes of action, all under state law, against Baseline Sports, Baseline Licensing, Barnes, and Roberson. Specifically, the Bank asserts claims of fraud, constructive fraud, and breach of fiduciary duty against Baseline Sports, Roberson, and Barnes. The Bank further asserts claims of conspiracy to injure SunTrust under Virginia Code §§ 18.2-499(A) and 18.2-500 and conspiracy to injure SunTrust under Virginia Code §§ 18.2-499(B) and 18.2-500 against all four Defendants.

Under the fraud and constructive fraud counts, SunTrust alleges that Baseline Sports, Barnes, and Roberson represented that the accounts receivable at issue constituted legitimate debts owed to the Debtor and that these debts had significant value. SunTrust asserts that at the time of the representations, Baseline Sports, Barnes, and Roberson knew these representations were false, or made the representations negligently or with reckless indifference, with the intent to mislead, and were acting in their own self-interest while making the representations. Specifically, the alleged false representations were made to prevent SunTrust from obtaining relief from the automatic stay and to induce SunTrust to enter into the SunTrust Settlement. Thus, "SunTrust relied upon these representations to its detriment, as it entered into a settlement

and signed the Settlement Agreement, releasing Roberson, Barnes, and Baseline Licensing from liability, yet did not receive the amount and value of the Receivables as they had been represented." Compl. ¶¶ 91 & 102.

SunTrust also alleges that Baseline Sports, Baseline Licensing, Barnes, and Roberson violated Virginia's business conspiracy statute, Virginia Code § 18.2-499(A) and (B).  Under the § 18.2-499(A) claim, SunTrust alleges that the Defendants conspired to injure SunTrust by making false and deceptive representations regarding the accounts receivable to compel SunTrust to accept the receivables in lieu of their full liability upon the loans.  Under the § 18.2-499(B) claim, SunTrust alleges that the Defendants procured the cooperation of each other for the purpose of willfully and maliciously injuring SunTrust by the fraudulent and deceptive representations regarding the accounts receivable to compel the Bank to accept the accounts receivable in lieu of liability on the loans.  Under both of the above Virginia Code provisions the Bank asserts that "Baseline Licensing willfully and intentionally utilized the fraudulent and deceptive representations made by Roberson, Barnes, and Baseline Sports to cause SunTrust to release it from liability." Compl. ¶ 107.  With each conspiracy count, SunTrust also asserts a claim under Virginia Code § 18.2-500, which provides that "[a]ny person who shall be injured in his reputation, trade, business or profession by reason of a violation of § 18.2-499, may sue therefor and recover three-fold the damages by him sustained, and the costs of suit, including a reasonable fee to plaintiff's counsel. . . ." Va. Code Ann. § 18.2-500(A) (2008).  Therefore, § 18.2-500(A) provides a civil remedy for the violation of the criminal statute. *See id*. § 18.2-499(A) (stating that an individual who violates § 18.2-499(A) "shall be guilty of a Class 1 misdemeanor"); *Williams v. Dominion Tech. Partners L.L.C.*, 265 Va. 280, 289 (2003); *see also Va. Vermiculite, Ltd. v. W.R. Grace & Co.*, 144 F. Supp. 2d 558, 601 (W.D. Va. 2001); Michael

F. Urbanski & James R. Creekmore, Antitrust and Trade Regulation Law, 33 U. Rich. L. Rev.

769, 786 (1999).

Finally, SunTrust alleges that Roberson and Barnes, in their capacities as officers and

directors of Baseline Sports, and Baseline Sports breached the fiduciary duty owed to SunTrust

as a creditor of Baseline Sports after the debtor become insolvent in September 2006.  Thus,

SunTrust asserts, these parties breached the fiduciary duty owed to the Bank when they made

fraudulent and misleading statements regarding the state of the accounts receivable.

In its prayer for relief, SunTrust requests total damages in the amount of $347,679.31[7]

jointly and severally against the Defendants; treble damages under the conspiracy counts under

the authority of Virginia Code § 18.2-500; punitive damages of $350,000 jointly and severally

against the Defendants; and attorney's fees and costs. Importantly, SunTrust does not seek

rescission of the SunTrust Settlement; rather, the sole remedy prayed for is an award of monetary

damages against the Defendants.

e. *The Defendants' Motions to Dismiss*

The Defendants moved to dismiss on several grounds, including dismissal for lack of

subject matter jurisdiction. Baseline Licensing Mot. to Dismiss ¶¶ 6–11.[8]  Baseline Licensing

premised this portion of its Motion to Dismiss on the basis that SunTrust's claims against it were

not "related to" the bankruptcy case, and thus, the Court lacked subject matter jurisdiction to

hear SunTrust's causes of action against it.  At the hearing on the Motions to Dismiss, however,

---

[7] In the first four counts, the Bank states that it has been damaged in the amount of $347,679.31, less the amounts of accounts receivable actually collected. Under the breach of fiduciary duty claim and in the prayer for relief, however, the Bank requests damages of $347,679.31.

[8] Roberson's and Barnes's Motions to Dismiss cite identical grounds and authorities as Baseline Licensing's Motion to Dismiss.

counsel for Baseline Licensing withdrew his argument that the Court lacked subject matter jurisdiction to hear the dispute.

## II. Conclusions of Law

"Like other federal courts, bankruptcy courts are courts of limited jurisdiction, and as such, they 'must be alert to avoid overstepping their limited grants of jurisdiction.'" *Poplar Run Five Ltd. P'ship v. Va. Elec. & Power Co.* (*In re Poplar Run Five Ltd. P'ship*), 192 B.R. 848, 854 (Bankr. E.D. Va. 1995) (citing *Canal Corp. v. Finnman* (*In re Johnson*), 960 F.2d 396, 399 (4th Cir. 1992); (quoting *McCorkle v. First Pa. Banking & Trust Co.*, 459 F.2d 243, 244 n.1 (4th Cir. 1972)). "At any stage of a litigation . . . subject matter jurisdiction may be questioned. . . . If the court perceives the defect, it is obligated to raise the issue *sua sponte*." *McCorkle*, 459 F.2d at 244–45 n.1. Subject matter jurisdiction presents particular concerns for bankruptcy courts when a third party attempts to sue non-debtor third parties in bankruptcy court. Accordingly, this Court is obliged to examine whether it is vested with subject matter jurisdiction such that it is proper for this Court to adjudicate the matters before it, regardless of whether any party raises the issue.

The Court must, of course, identify the nature of SunTrust's claims in order to determine whether subject matter jurisdiction exists so that the Court may rule on the Plaintiff's substantive claims.

a. *The Nature of Plaintiff's State Law Claims*

1. Fraud in the Inducement

In the first two counts of its Complaint, SunTrust alleges that Baseline Sports, Roberson, and Barnes committed fraud and constructive fraud.  In its Complaint, SunTrust cites no case or statutory authority to support its claims. In its Brief and Supplemental Brief in Opposition to the

Motions to Dismiss filed by Baseline Sports, Barnes, and Roberson, and at the hearing on the

Motions to Dismiss, SunTrust clarified that the specific nature of the fraud and constructive

fraud claims it was seeking is fraud in the inducement. *See* SunTrust Bank's Br. in Opp'n to the

Mots. to Dismiss filed by Baseline Sports, Barnes, and Roberson, at 7–8, 10 n.1; SunTrust

Bank's Supplemental Br. in Opp'n to the Mots. to Dismiss filed by Baseline Sports, Barnes, and

Roberson, at 3–4; Tr. at 23–24, 27, 36–37. Therefore, the Court accepts that SunTrust alleges a

claim for fraud in the inducement against Baseline Sports, Barnes, and Roberson.

The fraud claims SunTrust asserts arise under Virginia state common law.  In *George*

*Robberecht Seafood, Inc. v. Maitland Bros. Co.*, the Supreme Court of Virginia recognized a

cause of action for fraud in the inducement to a contract.  220 Va. 109, 111 (1979) (citing *Brame*

*v. Guarantee Fin. Co.*, 139 Va. 394 (1924)).  The court there concluded that fraud committed in

the inducement to a contract provided grounds to rescind the disputed contract, *id.* at 111–12, or

alternatively, the aggrieved party may let the contract stand and go forth with an "action for

damages in a court of law," *id*. at 112.  Thus, a plaintiff may elect to either rescind a contract that

was fraudulently induced or preserve the contract and sue for damages incurred as a result of the

fraudulent inducement.  For purposes of the questions with which this Court must grapple, it is

crucial to note that if a party elects to preserve the contract and sue for damages "for fraudulent

misrepresentations inducing the plaintiff to enter a contract [such an action] *is an action in tort*."

*Marwell La. Inc. v. Harris*, Nos. 95-0041-C, 95-0042-C, 1996 WL 335380, at *9 (W.D. Va. May

29, 1996) (quoting *Marshall v. Keaveny*, 248 S.E.2d 750, 753 (N.C. Ct. App. 1978)) (emphasis

added); *see also Bank of Montreal v. Signet Bank*, 193 F.3d 818, 828–29 (4th Cir. 1999) (stating

that fraud in the inducement as recognized in the *George Robberecht* case sounds in tort);

*Augusta Mut. Ins. Co. v. Mason*, 274 Va. 199, 205 (2007) (recognizing that "a single act or

occurrence can, in certain circumstances, support causes of action for both breach of contract and for breach of a duty arising in tort" if the defendant breaches a duty separate from the duties required by the contract) (citing *Foreign Mission Bd. v. Wade*, 242 Va. 234, 241 (1991)).  The classification of such a claim as sounding in tort law, rather than contract law, is key because "the tort of fraud in the inducement predates the contract, so a contractual waiver of liability is ineffective." *Bank of Montreal*, 193 F.3d at 828.  The understanding that any claim for fraud in the inducement is not based on the contract itself, but rather, upon conduct prior to the settlement's formation and that, in a temporal sense, any tort that may have been committed predates the formation of the settlement, is critical for the Court's jurisdictional analysis and classification of the type of bankruptcy claim SunTrust may have.  *See* section II.b.2, *infra*.  Indeed, as SunTrust noted in its papers filed with the Court and at the hearing, it elected not to rescind the SunTrust Settlement, but rather to let the settlement stand and sue for damages it allegedly incurred as a result of entering into the contract. *See* SunTrust Bank's Supplemental Br. in Opp'n to the Mots. to Dismiss filed by Baseline Sports, Barnes, and Roberson, at 3–4; Tr. 23:15–23:18 ("We are not rescinding the settlement agreement. . . .We are instead suing for damages. . . .").

2.  Virginia Code §§ 18.2-499(A), 18.2-499(B), & 18.2-500(A)

The Virginia business conspiracy statute, codified at Virginia Code § 18.2-499(A)–(B), allows a plaintiff "to recover in an action for conspiracy to harm a business, if the plaintiff can prove (1) a combination of two or more persons for the purposes of willfully and maliciously injuring the plaintiff in his business, and (2) resulting damage to the plaintiff." *Allen Realty Corp. v. Holbert*, 227 Va. 441, 449 (1984) (citing *Gallop v. Sharp*, 179 Va. 335, 338 (1942)). The statutory language of the business conspiracy statute provides:

A. Any two or more persons who combine, associate, agree, mutually undertake or concert together for the purpose of (i) willfully and maliciously injuring another in his reputation, trade, business or profession by any means whatever or (ii) willfully and maliciously compelling another to do or perform any act against his will, or preventing or hindering another from doing or performing any lawful act, shall be jointly and severally guilty of a Class 1 misdemeanor. Such punishment shall be in addition to any civil relief recoverable under § 18.2-500.

B. Any person who attempts to procure the participation, cooperation, agreement or other assistance of any one or more persons to enter into any combination, association, agreement, mutual understanding or concert prohibited in subsection A of this section shall be guilty of a violation of this section and subject to the same penalties set out in subsection A.

Va. Code Ann. § 18.2-499(A)–(B) (2008).

The parties argue, among other things, whether the Virginia conspiracy statute requires a party to affirmatively act in order to be held liable under the statute. While this Court takes no stance on whether an affirmative act is required under Virginia law, the Court notes that the salient point in this debate—whether the Defendants acted or failed to act sufficient to trigger liability under the statute—relates to conduct that occurred prior to signing the SunTrust Settlement. Therefore, if the elements required to establish liability are met under Virginia Code §§ 18.2-499(A)–(B) and 18.2-500(A), such findings will be based on conduct or representations prior to, and independent of, the terms of the SunTrust Settlement, and after the petition for relief was filed.[9]

---

[9] It is unclear whether the underlying conduct which SunTrust asserts violates Virginia Code § 18.2-499(A)–(B) is misrepresenting the value or existence of the accounts receivable, such that SunTrust was fraudulently induced into the settlement agreement, or breaching the requirement of good faith and fair dealing allegedly inherent in the settlement. *Compare* Compl. at ¶¶ 105–07, 113–14 (suggesting that the "willful and malicious injury" underlying the conspiracy relates to the alleged misrepresentation of the value of the receivables), *and* Br. in Opp'n to Baseline Licensing, LLC's Mot. to Dismiss, at 12 ("Baseline Licensing violated Va. Code § 18.2-499 and -500 . . . by inducing it to enter the settlement and causing it to release Baseline Licensing."), *and id.* at 13–14, *and* SunTrust Bank's Supplemental Br. in Opp'n to the Mots. to Dismiss filed by Baseline Sports, Barnes, and Roberson at 14 ("The goal of the common plan was to induce SunTrust to enter into the settlement and release Roberson, Barnes, and Baseline Licensing, thereby allowing Roberson and Barnes to continue their business through the unencumbered vehicle of Baseline Licensing."), *and id.* at 15, *with* Compl. ¶ 110, 117 ("The actions of [the defendants] have damaged SunTrust as it has been deprived of the full benefit of its bargain in entering into the Settlement Agreement), *and* Brief in Opp'n to Baseline Licensing, LLC's Mot. to Dismiss, at 15–16 ("As a party to the Settlement Agreement, Baseline Licensing owed SunTrust a duty of good faith and fair dealing. Every contract in

3.  Breach of Fiduciary Duty

SunTrust argues that Roberson, Barnes, and Baseline Sports breached a fiduciary duty allegedly owed to SunTrust in the course of the negotiations leading to the SunTrust Settlement. As with SunTrust's fraud in the inducement tort claims and conspiracy claims, any conduct establishing a breach of a duty owed occurred prior to the parties signing the SunTrust Settlement.

b. *Does this Bankruptcy Court Have Subject Matter Jurisdiction to Hear SunTrust's State Law Claims Against the Defendants*?

1. Does the Court's Order Approving the SunTrust Settlement Agreement Preclude SunTrust from Asserting its Claims?

Before reaching the issue of whether the Court has subject matter jurisdiction over SunTrust's substantive claims, the Court will examine Baseline Sports's argument that Federal Rule of Civil Procedure 60(b), as incorporated by Federal Rule of Bankruptcy Procedure 9024, requires SunTrust to first obtain relief from the Court's Order Approving SunTrust Settlement Agreement prior to asserting any fraud claims against the Defendants.[10] The gravamen of Baseline Sports's argument here is that because SunTrust did not first obtain relief from the Court's Order Approving SunTrust Settlement Agreement, it is precluded from arguing that any of the Defendants acted fraudulently in the course of the settlement negotiations because the order contains a finding of fact which states: "E. The Settlement Agreement was the product of intensive negotiations. The Settlement Agreement was not the product of collusion, but instead

---

Virginia, including the Settlement Agreement, contains an implied covenant of good faith and fair dealing in the performance of the agreement."), *and* Supplemental Br. in Opp'n to Baseline Licensing, LLC's Mot. to Dismiss, at 2 (same), *and id.* at 3 (same).  Ultimately, since the Court does not have jurisdiction to adjudicate SunTrust's substantive claims, the Court need not delve into the merits of the SunTrust conspiracy claims and takes no position on them. The Court notes, however, that the acts which SunTrust alleges violate the conspiracy statute, whether based on tort principles (fraudulent inducement) or contract principles (breach of the duty of good faith and fair dealing), occurred prior to the signing of the SunTrust Settlement.

[10] The Court permitted the parties to submit supplemental briefs on this point.

was made in good faith." *See* Order Approving SunTrust Settlement Agreement, at 2 (hereinafter "Finding of Fact E"). Therefore, if the Court finds that SunTrust must first obtain relief under Rule 60 prior to asserting any fraud claims against the Defendants, it need not reach the jurisdictional and substantive merits of SunTrust's claims because such issues would not be properly before the Court. Alternatively, if the Court finds that SunTrust's fraud claims are not precluded by the order approving the settlement, then it need not address whether SunTrust must first seek relief under Rule 60 prior to asserting any claims of fraudulent conduct by the Defendants.

As preliminary matter, the Court must evaluate the discrete issue of whether it has subject matter jurisdiction to interpret and enforce its own order and the settlement to determine whether Finding of Fact E precludes SunTrust from asserting its claims.  "It is well settled that a district court retains inherent jurisdiction and equitable power to enforce agreements entered into in settlement of litigation before that court." *Ozyagcilar v. Davis*, 701 F.2d 306, 308 (4th Cir. 1983).  The retention of jurisdiction to interpret and enforce settlements and the accompanying orders approving settlements extends to bankruptcy courts. *See Stokes v. Firestone* (*In re Stokes*), 198 B.R. 168, 175 (E.D. Va. 1996); *see also* 11 U.S.C. § 105(a) (2008) ("No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules. . . ."); *Cavazos v. Mid-State Trust II* (*Hillsborough Holding Corp.*), 267 B.R. 882, 889 (Bankr. M.D. Fla. 2001) ("[I]t is well settled that a federal court retains jurisdiction to enforce settlement agreements.").  Accordingly, the Court has subject matter jurisdiction to interpret whether its Order Approving SunTrust Settlement Agreement precludes SunTrust's claims.

In its Supplemental Memorandum in Support of Dismissal, Baseline Sports argues that the doctrine of collateral estoppel prevents SunTrust from asserting its claims due to the preclusive effect of the language of Finding of Fact E. SunTrust responds that neither the doctrine of collateral estoppel nor res judicata apply to its claims.

Because the Court ultimately concludes that Finding of Fact E is not identical to the claims that SunTrust raises in its Complaint, it need not determine whether the proper preclusion doctrine that applies in this case is collateral estoppel or res judicata.[11]  Both doctrines require an identity of issues between the issue or cause of action previously litigated and the issue or cause of action sought to be precluded. *See, e.g.*, *Pueschel v. United States*, 369 F.3d 345, 354 (4th Cir. 2004) (stating that an element required for res judicata is that there is an "identity of the cause of action in both the earlier and the later suit"); *Sedlack v. Braswell Servs. Group*, 134 F.3d 219, 224 (4th Cir. 1998) (stating that an element of collateral estoppel is that "the issue sought to be precluded is identical to one previously litigated"). In this case, Finding of Fact E must be identical to an element of SunTrust's claims for any preclusion doctrine to apply.  If the two issues are not identical, then neither preclusion doctrine applies, and SunTrust need not seek relief under Federal Rule of Civil Procedure 60 to "undo" the Court's findings of fact in the Order Approving SunTrust Settlement Agreement in order to move forward with its Complaint.

The Court finds that its conclusion in Finding of Fact E that "[t]he Settlement Agreement was the product of intensive negotiations. The Settlement Agreement was not the product of collusion, but instead was made in good faith" is not identical to any issues raised in SunTrust's Complaint.  Black's Law Dictionary defines collusion as "[a]n agreement to defraud another or to do or obtain something forbidden by law." *Black's Law Dictionary* (8th ed. 2004).  Thus, the

---

[11] The doctrine of "law of the case" may be the proper preclusion doctrine for this factual scenario. *See In re Vernon-Williams*, No. 04-37223-DOT, 2007 Bankr. LEXIS 3253, at *31–37 (Bankr. E.D. Va. Sept. 21, 2007).

use of the word "collusion" means that the parties were attesting to the fact they had not reached an agreement *between each other* to defraud another party *outside of the agreement* and had negotiated to reach a settlement which each side believed to be in its own best interest.  Such a finding does not suggest that the parties were attesting to the fact that *the other side* was not acting in a fraudulent manner. Indeed, the crux of SunTrust's Complaint is that the Defendants concealed the state of the accounts receivable during the course of negotiations, and had it known the true state of those receivables, it would not entered into the SunTrust Settlement agreement.  Moreover, it would be impossible at the time of the settlement for SunTrust to attest to whether or not the Defendants acted fraudulently during the course of negotiations. Accordingly, because no preclusive effect can be given to the Order Approving SunTrust Settlement agreement, SunTrust was not required to seek relief under Federal Rule of Civil Procedure 60(b) prior to filing its Complaint against the Defendants.

Simply because the Court retains jurisdiction to interpret its own order, however, does not necessarily vest the Court with subject matter jurisdiction to hear any litigation between the parties that are subject to that order.   In other words, a bankruptcy court will likely have jurisdiction to interpret its own order to determine whether a party may bring a suit, but the court must possess an independent jurisdictional basis to adjudicate that litigation in the bankruptcy court. *See C.F. Trust, Inc. v. Tyler* (*In re Peterson*), 318 B.R. 795, 804 (E.D. Va. 2004). In *C.F. Trust*, the district court, reviewing the bankruptcy court's decision below, found that a proceeding in which the bankruptcy court interpreted whether an order confirming a Chapter 11 plan permitted the payment of certain costs and fees was a core matter. *Id*.  However, whether the fees should be awarded, and the proper amount of those fees, was a non-core proceeding. *Id*. While the *C.F. Trust* court dealt with core versus non-core proceedings, the case stands for the

proposition that the authority of a bankruptcy court to interpret its own orders does not necessarily provide the bankruptcy court with an independent subject matter basis to adjudicate any litigation that in any way relates to that order. Similarly, this Court must examine whether bankruptcy jurisdiction exists over SunTrust's claims and determine whether that jurisdiction is core, non-core, or entirely non-existent.

The factual circumstances here highlight the importance of this examination. Indeed, SunTrust intends to leave the SunTrust Settlement in place and undisturbed. While the claims in SunTrust's Complaint are factually related to the SunTrust Settlement, the claims do not seek enforcement, interpretation, or rescission of the SunTrust Settlement. Rather, the claims it asserts are based upon actions of the Defendants prior to the settlement's formation.  Accordingly, an independent subject matter jurisdiction basis must exist for this Court to adjudicate its claims.[12]

2. Does 28 U.S.C. § 1334 Vest this Court with Subject Matter Jurisdiction to Adjudicate SunTrust's Claims?

In pertinent part 28 U.S.C. § 1334 provides that:

(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

(b) Except as provided in subsection (e)(2), and notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

---

[12] Paragraph 2 of the Order Approving SunTrust Settlement contains a boilerplate retention of jurisdiction clause. However, a retention of jurisdiction provision cannot alone vest a court with subject matter jurisdiction.  *See Valley Historic Ltd. P'ship v. Bank of N.Y.*, 486 F.3d 831, 837 (4th Cir. 2007) ("[N]either the parties nor the bankruptcy court can create § 1334 jurisdiction by simply inserting a retention of jurisdiction provision in a plan of reorganization if jurisdiction otherwise is lacking. . . ."); *Binder v. Price Waterhouse & Co.* (*In re Resorts Int'l*), 372 F.3d 154, 161 (3d Cir. 2004) ("Retention of jurisdiction provisions will be given effect, assuming there is bankruptcy court jurisdiction. But neither the bankruptcy court nor the parties can write their own jurisdictional ticket. Subject matter jurisdiction 'cannot be conferred by consent' of the parties.") (citing *Coffin v. Malvern Fed. Savings Bank*, 90 F.3d 851, 854 (3d Cir. 1996)).

28 U.S.C. § 1334(a)–(b) (2008).  Pursuant to the Eastern District of Virginia, Norfolk Division, Standing Order entitled "In the Matter of the Administration of the United States Bankruptcy Court in the Norfolk and Newport News Divisions of the Eastern District of Virginia" and under the authority of 28 U.S.C. § 157(a), all cases, matters, and proceedings "arising under," "arising in," or "related to" Title 11 of the United States Code are referred to the bankruptcy judges in the District.  Accordingly, a bankruptcy court has jurisdiction "of all civil proceedings arising under title 11, or arising in, or related to cases under title 11." 28 U.S.C. § 1334(b) (2008); *see also Valley Historic Ltd. P'ship v. Bank of N.Y.*, 486 F.3d 831, 835 (4th Cir. 2007).

While § 1334(b) grants jurisdiction to the district court and by extension, the bankruptcy court, over proceedings "arising under," "arising in," and "related to" Title 11, § 157 of Title 28 distinguishes between those proceedings and tempers the authority of the bankruptcy court. If a proceeding is "core," a bankruptcy judge may "hear and determine" the proceeding, 28 U.S.C. § 157(b), and "thus issue dispositive orders in all core proceedings arising under title 11, or arising in a case under title 11," *Poplar Run Five Ltd. P'ship v. Va. Elec. & Power Co.* (*In re Poplar Run Five Ltd. P'ship*), 192 B.R. 848, 855 (Bankr. E.D. Va. 1995) (citing 28 U.S.C. § 157(b)).  In a proceeding that is non-core but is "related to" a case under Title 11, a bankruptcy judge may hear the case but cannot enter dispositive orders and must submit findings of fact and conclusions of law to the district court, and any final order must be entered by a district judge. 28 U.S.C. § 157(c) (2008).

Core matters, therefore, are proceedings that "arise under" or "arise in" a case under the Bankruptcy Code. *Stoe v. Flaherty*, 436 F.3d 209, 217 (3d Cir. 2006) (finding that an inquiry as to whether a proceeding "arises under" or "arises in" a case in Title 11 is the equivalent of asking whether the proceeding is core); *Wood v. Wood* (*In re Wood*), 825 F.2d 90, 96 (5th Cir. 1987)

("[S]ection 157 apparently equates core proceedings with the categories of "arising under" and "arising in" proceedings."). Section 157(b)(2) provides a non-exhaustive list of core proceedings. 28 U.S.C. § 157(b)(2) (2008); *see also Peterson v. Tyler*, 318 B.R. 795, 803 (E.D. Va. 2004) ("While the amended statute does not define 'core proceedings,' it sets forth a non-exhaustive list of fifteen examples of matters falling within that description. . . ."). Because core proceedings are coextensive with that of proceedings that "arise under" or "arise in" a Title 11 case, if a proceeding "arises under" or "arises in" a Title 11 case, it is a core proceeding.  As one court noted, "although the purpose of [the] language in § 1334(b) is to define conjunctively the scope of jurisdiction, each category has a distinguishable meaning." *Wood*, 825 F.2d at 96. Accordingly, the Court will examine each category of bankruptcy jurisdiction and determine if the causes of action in SunTrust's Complaint fall within the scope of those definitions.

i. *"Arising under"*

Jurisdiction for cases "arising under title 11" refers to those cases in which the Bankruptcy Code itself creates the plaintiff's cause of action or "if the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal bankruptcy law." *Gates v. Didonata* (*In re Gates*), Case No. 04-12076-SSM, 2004 Bankr. LEXIS 2303, at *5 (Bankr. E.D. Va. Oct. 20, 2004) (citing *Poplar Run*, 192 B.R. at 855). "Congress used the phrase 'arising under title 11' to describe those proceedings that involve a cause of action created or determined by a statutory provision of title 11." *Wood*, 825 F.2d at 96; *see also Stoe*, 436 F.3d at 216 ("A case 'arises under' title 11 if it invokes a substantive right provided by title 11.").

All of SunTrust Bank's causes of action are based upon Virginia common law or causes of action derived from the Code of Virginia. SunTrust's causes of action do not invoke a

substantive right provided by the Bankruptcy Code. Therefore, SunTrust's claims arise under Virginia state law and not Bankruptcy Code. *See Stoe*, 436 F.3d at 217.

ii. "*Arising in*"

The Court of Appeals for the Fourth Circuit first examined the scope of "arising in" jurisdiction in *Bergstrom v. Dalkon Shield Claimants Trust*, one of the many appeals related to the Dalkon Shield products liability litigation. There, the question before the Court of Appeals concerned whether the district court below[13] had "arising in" jurisdiction to limit the amount of attorneys' fees that could be collected during the distribution of the products liability trust established to pay tort claimants for injuries sustained resulting from the use of the Dalkon Shield contraceptive. *Bergstrom v. Dalkon Shield Claimants Trust* (*In re A.H. Robbins Co.*), 86 F.3d 364, 372 (4th Cir. 1996). Citing the leading case explaining post-*Marathon*[14] bankruptcy court jurisdiction, *In re Wood*, the Fourth Circuit quoted the Fifth Circuit's understanding that proceedings "arising in" Title 11 "are those proceedings that 'are not based on any right expressly created by Title 11, but nevertheless, would have no existence outside of bankruptcy.'" *Bergstrom*, 86 F.3d at 372 (citing *Wood*, 825 F.2d at 97). Thus, the litigation before the Fourth Circuit "arose in" Title 11 because the litigation regarding the structure of the attorney fee distribution from the claimants trust "would have no practical existence but for the bankruptcy." *Id*. The Court of Appeals reasoned that the claimants trust and its unique pro-rata distribution of funds and allocation of attorneys' fees would not have occurred but for the bankruptcy, and such a fee structure was unique to the bankruptcy. *See id*.

---

[13] While the United States District Court for the Eastern District of Virginia retained jurisdiction for this case, it was sitting in bankruptcy. *Bergstrom v. Dalkon Shield Claimants Trust* (*In re A.H. Robbins Co.*), 86 F.3d 364, 368 (4th Cir. 1996).

[14] *N. Pipeline Constr. Co. v. Marathon Pipeline Co.*, 458 U.S. 50 (1982).

The Fourth Circuit again addressed the reach of "arising in" jurisdiction in *Grausz v. Englander*, 321 F.3d 467 (4th Cir. 2003). The plaintiff in *Grausz* brought a malpractice lawsuit in Maryland state court against the attorney who had represented him during his Chapter 11 bankruptcy case. *Id*. at 469. That case was removed to the United States District Court for the District of Maryland. *Id*. at 471. The district court concluded that the plaintiff's malpractice claim was barred by res judicata. *Id*. On appeal, the plaintiff challenged both the district court's ruling and the district court's jurisdiction to hear his case. *Id*.

Ultimately, the Fourth Circuit concluded that the bankruptcy court's approval of the plaintiff's bankruptcy counsel's attorney fee application barred the plaintiff's malpractice claim under principles of res judicata. *Id*. at 472–75. The Court of Appeals first concluded that the district court had "arising in" jurisdiction to hear the litigation. Citing *Bergstrom*, the Fourth Circuit found that "jurisdiction exists over a malpractice claim against a lawyer for providing negligent advice to a debtor in a bankruptcy case." *Id*. at 471–72. Though not specifically included in the court's jurisdictional analysis, the Fourth Circuit's judgment that "arising in" jurisdiction existed in the *Grausz* case cannot be decoupled from the factual context from which the case arose. Thus, the unique process by which the bankruptcy court approved the plaintiff's former bankruptcy attorney's fee application during the pendency of bankruptcy case, which precluded the plaintiff from bringing a malpractice action against his attorney in later litigation, must have informed the Fourth Circuit's decision that the nature this malpractice claim "'would have no practical existence but for the bankruptcy' case." *Id*. at 472. (quoting *Bergstrom*, 86 F.3d at 372). This Court is also mindful that courts, including the Fourth Circuit, find that proceedings involving legal services rendered during the course of a bankruptcy proceeding fall

within "arising in" jurisdiction.  *See id.* (citing *Simmons v. Johnson, Curney, & Fields, P.C.* (*In re Simmons*), 205 B.R. 834, 841 (Bankr. W.D. Tex. 1997)).

While the *Bergstrom* and *Grausz* cases seemingly stand for the proposition that the Fourth Circuit follows a broad understanding of the reach of "arising in" jurisdiction, *see id.* at 471, this Court, like any court of limited jurisdiction "must be alert to avoid overstepping their limited grants of jurisdiction," *Poplar Run Five Ltd. P'ship v. Va. Elec. & Power Co.* (*In re Poplar Run Five Ltd. P'ship*), 192 B.R. 848, 854 (Bankr. E.D. Va. 1995) (quoting *McCorkle v. First Pa. Banking & Trust Co.*, 459 F.2d 243, 244 n.1 (4th Cir. 1972)).  Moreover, the Fourth Circuit's recent decision in *Valley Historic Limited Partnership v. The Bank of New York* recognized that the "but for" test would not extend "arising in" jurisdiction to a Debtor's "breach of contract claim and tortious interference claim [that] would have an existence outside of bankruptcy. . . ." 486 F.3d 831, 836 (4th Cir. 2007).  Indeed, as Judge Bostetter of this Court recognized, "the problem with the 'but for' test, as expressed in [*Bergstrom*] is that it is over-inclusive. At its fullest breadth, the 'but for' test would allow a plaintiff to invoke the core jurisdiction of a bankruptcy court by simply tracing the origins of the dispute to a prior bankruptcy." *Poplar Run*, 192 B.R. at 857.  Further, as noted above, both the *Bergstrom* and *Grausz* cases' factual context related to the fees or services rendered in bankruptcy cases.  As the case before this Court involves Virginia state law claims against the Debtor and other third-party defendants, and not a dispute over attorney fees or conduct, this Court must further examine the contours of "arising in" jurisdiction to assure that it does not overstep the jurisdictional limitations placed upon it by 28 U.S.C. § 1334.

The genesis of the "but for" test in this Circuit is the *Bergstrom* case, in which the Fourth Circuit exclusively cites the Fifth Circuit's *Wood* decision. Thus, the *Wood* court's reasoning is

informative and helps flesh out the Fourth Circuit's original understanding of "arising in" jurisdiction. In *Wood*, the Fifth Circuit stated, "[t]he meaning of 'arising in' proceedings is less clear, but seems to be a reference to those 'administrative' matters that arise *only* in bankruptcy cases." *Wood v. Wood* (*In re Wood*), 825 F.2d 90, 97 (5th Cir. 1987) (emphasis in original). The Fifth Circuit noted that the *Collier* bankruptcy treatise understood "arising in" to encompass a narrow category of administrative matters that occur only within the context of a bankruptcy case.[15] *Id.* (citing 1 *Collier on Bankruptcy* ¶ 3.01 at 3-23 (1987)). Indeed, as the non-exhaustive list of "core" bankruptcy matters in 28 U.S.C. § 157(b)(2)(A)–(P) illustrates, core proceedings concern the administration of a bankruptcy case and are matters that could, by their nature, only arise in a bankruptcy case.[16] *See* 28 U.S.C. § 157(b)(2)(A–P) (2008).  The Court went on to state

---

[15] The current version of the *Collier* treatise states that "the phrase 'administrative matters'. . . . is the principle constituent of 'arising in' jurisdiction." 1-3 *Collier on Bankruptcy* ¶ 3.01[4][c][iv] (15th ed. 2008).  The treatise further explains that "[t]here is no 'but for' test for arising in jurisdiction; that is, the fact that a matter would not have arisen had there not been a bankruptcy case does not *ipso facto* mean that the proceeding qualifies as an 'arising in' proceeding." *Id.*

[16] 11 U.S.C. § 157(b)(2)(A)–(P) provides that:
    Core proceedings include, but are not limited to—
        (A) matters concerning the administration of the estate;
        (B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;
        (C) counterclaims by the estate against persons filing claims against the estate;
        (D) orders in respect to obtaining credit;
        (E) orders to turn over property of the estate;
        (F) proceedings to determine, avoid, or recover preferences;
        (G) motions to terminate, annul, or modify the automatic stay;
        (H) proceedings to determine, avoid, or recover fraudulent conveyances;
        (I) determinations as to the dischargeability of particular debts;
        (J) objections to discharges;
        (K) determinations of the validity, extent, or priority of liens;
        (L) confirmations of plans;
        (M) orders approving the use or lease of property, including the use of cash collateral;
        (N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate;
        (O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims; and
        (P) recognition of foreign proceedings and other matters under chapter 15 of title 11.

11 U.S.C. § 157(b)(2)(A)–(P) (2008).

"[i]n other words, "arising in' proceedings are those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy." *Wood*, 825 F.2d at 97. Based on that language, it appears that the *Bergstrom* "but for" test is a rephrasing of this quotation from *Wood*.

Courts outside this circuit agree with the *Wood* court's understanding that "arising in" jurisdiction was intended to extend a bankruptcy court's jurisdiction to administrative matters that, by their nature, rather than by their particular factual circumstance, could only occur in a bankruptcy. Indeed, one court, specifically referring to the *Wood* decision, recognized the proper focus of "arising in" proceedings is bankruptcy administrative matters. *See Winstar Holdings, LLC v. The Blackstone Group, L.P.*, Case No. 07 Civ. U.S. 4634 (GEL), 2007 U.S. Dist. LEXIS 90482, at *10–11 (S.D.N.Y. Dec. 10, 2007). Further elaborating on this point, that Court stated, "[t]he courts and commentators using the 'no existence outside bankruptcy' formulation seem to be referring to the proceedings that *by their very nature cannot exist outside of bankruptcy*, and not merely to actions that, as a factual matter, have their origins in events occurring during a bankruptcy proceeding." *Id.* at *11 (emphasis added). Similarly, the United States Court of Appeals for the Third Circuit's analysis of "arising in" jurisdiction concluded that "claims that 'arise in' a bankruptcy case are claims that by their nature, not their particular factual circumstance, could only arise in the context of a bankruptcy." *Stoe v. Flaherty*, 436 F.3d 209, 218 (3d Cir. 2006) (citing *Halper v. Halper*, 164 F.3d 830, 836 (3d Cir. 1999)); 1 *Collier on Bankruptcy* § 3.01[4][c][iv] at 3-31). In this sense, the "but for" test stands for the proposition that "but for" the bankruptcy the matter before the court could not have occurred *by its nature*, not simply because it arose during or because of a bankruptcy. Based on this analysis, the proper jurisdictional focus is on the plaintiff's cause of action, rather than the factual situation from

which the cause of action arose. The view that something more than a factual and temporal connection to a bankruptcy case is needed to support "arising in" jurisdiction is supported by other decisions in this district. *See Gates v. Didonato* (*In re Gates*), Case No. 04-12076-SSM, 2004 Bankr. LEXIS 2303, at *6–7 (Bankr. E.D. Va. Oct. 20, 2004) ("[T]his court believes that something more is required to sustain 'arising in' jurisdiction in a chapter 7 case than simply the fact that the relevant actions occurred, in a temporal sense, during the pendency of the case."). The unique res judicata effect of the bankruptcy fee application approved in *Grausz* and the products liability claimants trust created in the A.H. Robbins Company bankruptcy in *Bergstrom* support this interpretation, because by their nature, these proceedings could not have occurred but for the bankruptcy. *See Simmons v. Johnson, Curney, & Fields, P.C.* (*In re Simmons*), 205 B.R. 834, 841 (Bankr. W.D. Tex. 1997) (describing the *Bergstrom* court's basis for finding "arising in" jurisdiction as based upon Debtor's plan of reorganization which "shoehorn[ed] all claimants into an exclusive mechanism by which those claimants are to be satisfied for years into the future out of that trust, then future disputes over the interpretation or enforcement of the trust *would* fall into the bankruptcy's court's 'arising in' jurisdiction because such disputes would not have occurred but for the bankruptcy process.") (emphasis in original).

SunTrust's claims against the Defendants are not the type of administrative matters which could only happen, by their nature, in a bankruptcy case.  The claims underlying SunTrust's Complaint are based upon Virginia state law and allege that SunTrust sustained damages based upon fraud, conspiracy, and the Defendants' breach of fiduciary duty owed to SunTrust. SunTrust's claim for fraud in the inducement sounds in tort and, moreover, relates to the conduct and representations of Baseline Sports, Barnes, and Roberson prior to the parties entering into the SunTrust Settlement. Similarly, SunTrust's claims against the Defendants for its alleged

violation of Virginia Code §§ 18.2-499(A)–(B) and 18.2-500(A) are based on a cause of action

established by the Code of Virginia, and its claim for breach of fiduciary duty is based upon

Virginia common law.

Any of these claims could by, their nature, arise outside of a bankruptcy. Indeed, the

cases upon which SunTrust relies as its principal authority for its fraud claims, *George

Robberecht Seafood, Inc. v. Maitland Bros. Co.* and *Bank of Montreal v. Signet Bank*, did not

involve fraud claims in bankruptcy cases, but in a Virginia state court case, and in a federal

district court case, respectively. *See George Robberecht Seafood, Inc. v. Maitland Bros. Co.*,

220 Va. 109 (1979); *Bank of Montreal v. Signet Bank*, 193 F.3d 818 (4th Cir. 1999). Further,

SunTrust's conspiracy claims, premised on Virginia statutory authority, and its breach of

fiduciary duty claim can, by their nature, occur outside of a bankruptcy case. Had the Debtor not

filed for bankruptcy, and if the parties had reached an agreement identical to the SunTrust

Settlement, SunTrust could have filed the same complaint in another forum.

At its core, SunTrust asserts garden-variety fraud and conspiracy claims against the

Defendants. Rather than rescind the SunTrust Settlement, SunTrust has elected to sue under state

law theories of recovery for the damages it allegedly incurred as a result of entering into the

SunTrust Settlement. While the Court is mindful that "a determination that a proceeding is not a

core proceeding shall not be made solely on the basis that its resolution may be affected by State

law," 28 U.S.C. § 157(b)(3) (2008), SunTrust does not seek to use state law to effectuate an

administrative proceeding that could occur only in a bankruptcy proceeding, *see, e.g.*, 28 U.S.C.

§ 157(b)(2)(B) (listing the allowance or disallowance of claims against the estate as a core

matter, which may require a bankruptcy court to turn to state law to adjudicate the merits of a

potential claim); *Poplar Run*, 192 B.R. at 857 ("The Bankruptcy Code requires a creditor to file a

proof of claim as the first step for receiving a distribution from the estate. Although the Bankruptcy Code authorizes such filing, the issue of whether the claim is bona fide, and thus allowable, may ultimately turn on state law.") (citations omitted). SunTrust's state law claims cannot, by their very nature, be asserted only in a bankruptcy proceeding and do not fit into the narrow category of administrative proceedings that are the subject of "arising in" jurisdiction. *See Valley Historic Ltd. P'ship v. Bank of N.Y.*, 486 F.3d 831, 835–36 (4th Cir. 2007) (finding that a claim that would have existed regardless of a debtor's bankruptcy is insufficient to establish "arising in" jurisdiction); *Stoe*, 436 F.3d at 217–19 (holding that plaintiff's claims that arose solely under Pennsylvania state law were insufficient to trigger "arising in" jurisdiction); *Winstar Holdings, LLC*, 2007 U.S. Dist. LEXIS 90482, at *12 ("Plaintiffs here sue for fraud. Such a claim is not one that '*by its very nature* . . . can only be brought in a bankruptcy action.' Rather it is a garden variety fraud claim that most usually is brought outside of bankruptcy.") (emphasis in original); *In re Maggard*, Case No. 02-84136-SSM, 2007 Bankr. LEXIS 3893, at *7–8 (Bankr. E.D. Va. Nov. 9, 2007) ("[T]he Fourth Circuit's analysis in *Valley Historic Partnership* makes it clear that a cause of action does not 'arise in' a bankruptcy case simply because it arose *during* the case if it would have existed whether or not the debtor filed bankruptcy.") (emphasis in original).  Accordingly, this Court has no "arising in" jurisdiction to hear SunTrust's claims.

iii. *"Related to" jurisdiction*

Since the Court may not exercise "arising under" and "arising in" jurisdiction, the Court must now turn to the question of whether SunTrust's claims of fraud in the inducement, conspiracy, and breach of fiduciary duty are sufficiently "related to" Baseline Sports's

bankruptcy case such that it is proper to exercise subject matter jurisdiction over SunTrust's claims against the Defendants.

Further, the Court must comment on the unique posture of this case. SunTrust sues a Debtor, which is defunct and without assets, and two individuals and an entity, none of whom have declared bankruptcy. As SunTrust succinctly stated, "[t]he very purpose of the [SunTrust] Settlement Agreement as it pertains to Baseline Sports and Baseline Licensing was to effectively kill Baseline Sports so that Baseline Licensing could live." Br. in Opp'n to Baseline Licensing, LLC's Mot. to Dismiss, at 9. The Debtor's bankruptcy case has all but ended. Indeed, the Court's approval of the Committee Settlement is tantamount to confirmation of the Plan of Liquidation. The Committee Settlement would fund the claims of the Debtor's unsecured creditors, under the terms of that settlement, and administrative expenses and priority claims would be paid. SunTrust has no claims that will be paid under the Plan of Liquidation and accordingly cannot vote on the Plan's confirmation. 11 U.S.C. § 1126(a) (2008). If SunTrust had not sought to have its Complaint mentioned in the Debtor's Disclosure Statement, a confirmation hearing would have been set, the Plan of Liquidation would likely have been confirmed, and the Committee Settlement would have been consummated. SunTrust has exercised its rights in the collateral in which it had an interest, per the terms of the SunTrust Settlement. Effectively as to SunTrust, the Debtor's bankruptcy case is over.

With these understandings, the Court examines whether there is "related to" jurisdiction over SunTrust's claims. In *Valley Historic*, the Fourth Circuit reaffirmed that the Third Circuit's *Pacor* test is used in this circuit to determine whether "related to" jurisdiction exists. "In short, 'the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on *the estate* being administered

in bankruptcy.'" *Valley Historic*, 486 F.3d at 836 (quoting *Owens-Ill., Inc. v. Rapid Am. Corp.* (*In re Celotex Corp.*), 124 F.3d 619, 625 (4th Cir. 1997) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)) (emphasis added).   Moreover, "[a]n action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options or freedom of action (either positively or negatively) and [it] in any way impacts upon the handling and administration of the bankruptcy estate." *Id.* (quoting *Rapid Am. Corp.*, 124 F.3d at 625–26). Relying on recent Third Circuit decisions, the Fourth Circuit added additional layers of analysis for "related to" jurisdiction for bankruptcy cases in a post-confirmation posture. *See Valley Historic*, 486 F.3d at 836–37. As a plan of reorganization has yet to be confirmed for the Debtor in this case, however, that additional analysis is not necessary here.

The inquiry in this case, therefore, turns on whether SunTrust's causes of action against the Defendants could have a conceivable effect on the Debtor's bankruptcy estate. Only pre-petition and administrative claims may be paid from the bankruptcy estate; post-petition debts that cannot be categorized as administrative expenses are not claims against the bankruptcy estate. *See* 11 U.S.C. § 101(10)(A) (2008) ("The term 'creditor' means—entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor."); *id.* § 502(b) (stating that if an objection to a claim is made, the court shall determine the amount of the claim at the date of the filing of the petition for relief); *id.* § 503 (permitting administrative expenses to be paid from the estate for post-petition expenses incurred by the debtor); *In re Shin*, 306 B.R. 397, 404 (Bankr. D.D.C. 2004) ("Post-petition non-administrative claims are not claims against the estate in the chapter 11 case; instead they are claims against only the debtor individually."); *RTO Rents v. Benson* (*In re Benson*), 116 B.R. 606, 607 (Bankr. W.D. Ohio

1990) ("[A] bankruptcy court is concerned with the administration of that estate only with respect to claims that arose prior to the filing of the bankruptcy petition.").

Accordingly, if SunTrust's causes of action can be categorized as pre-petition or administrative claims, those claims could affect the Debtor's estate and would be "related to" its bankruptcy case. Conversely, if a potential judgment against one of the Defendants cannot be classified as one of these two types of bankruptcy claims and therefore could not affect the estate, then SunTrust's causes of action do not "relate to" Baseline Sports's bankruptcy case.

Title 11 defines "claim" as "(A)–right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." 11 U.S.C. § 101(5) (2008).  In the Fourth Circuit, a "conduct test" is used to determine when a claim arises for bankruptcy claim purposes.  *See Grady v. A.H. Robbins Co.*, 839 F.2d 198, 202–03 (4th Cir. 1988); *In re US Airways, Inc*., 365 B.R. 624, 629 (Bankr. E.D. Va. 2007); *In re Camellia Food Stores, Inc.*, 287 B.R. 52, 57 (Bankr. E.D. Va. 2002).  Given the broad definition that the Code gives to the term "claim," the Fourth Circuit "specifically rejected the concept that a right of payment must exist prior to the bankruptcy filing in order for a claim to arise pre-petition. Instead, it applied a conduct test where it merely required the events giving rise to a claim occur pre-petition." *In re Camellia Food Stores*, 287 B.R. at 57 (citing *Grady*, 839 F.2d at 202–03; *Zeitler v. Martel*, 255 B.R. 172, 177 (E.D.N.C. 1999)).  Whether a claim arises pre-petition, therefore, turns on whether the events giving rise to the claim occurred prior to the date the Debtor filed its bankruptcy petition. Accordingly, if the events giving rise to SunTrust's claims against the Defendants occurred prior to the filing of the petition, SunTrust's claims may be "related to" Baseline Sports's bankruptcy

case because SunTrust would have a potential claim against Baseline Sports's bankruptcy estate which could conceivably affect the estate.

On October 16, 2006, Baseline Sports filed its petition for relief in this Court.  The crux of SunTrust's Complaint lies in four representations made by Baseline Sports or the other Defendants. The first event occurred on September 29, 2006, when Baseline Sports represented in the September aging report that the accounts receivable were valued at $723,839.46; the second event was the representations made by Gary Roberson as to the collectability of accounts receivable at the preliminary hearing on SunTrust's first Motion for Relief from Stay on October 19, 2006; the next event was the value of the accounts receivable provided on Schedule B filed with the Court on November 9, 2006; the final event was the November 2007 aging report which listed the value of the accounts receivable at $704,202.30. These events culminated in the execution of the SunTrust Settlement, and the Order Approving the SunTrust Settlement which was entered by the Court on February 20, 2007.

While one event that gives rise to SunTrust's claim occurred prior the October 16, 2006, petition date, namely the September 2006 aging report, the most critical events which form the basis of SunTrust's Complaint—the filing of Schedule B, Roberson's October testimony, the November aging report, and the execution of the SunTrust Settlement in February 2007—are events which occurred post-petition. Thus, because the majority of the alleged essential misrepresentations regarding the status and collectability of the accounts receivable occurred post-petition, as well as SunTrust's entering into the SunTrust Settlement and collection on the accounts receivable, any claim SunTrust may have against the Defendants cannot be a pre-petition claim. *See In re Camellia Food Stores*, 287 B.R. at 57–58 (holding that a right to payment for insurance premiums under the conduct test is a post-petition claim because any

insurance coverage occurred post-petition); *see also Ivey v. Hunter Acquisitions, Inc.* (*In re Carolina Acoustical & Flooring, Inc.*), Case No. 05-13236C-7G, 2008 Bankr. LEXIS 1808, at *10–11 (Bankr. M.D.N.C. June 10, 2008) (applying the conduct test and determining that a claim for breach of contract that occurred prior to the commencement of the bankruptcy case was a pre-petition claim); *In re US Airways, Inc.*, 365 B.R. at 629–30 (finding that an employee's ADA claim was discharged because the essential events giving rise to the claim occurred prior to plan confirmation); *Georgetown Steel Co. LLC v. Capital City Ins. Co.* (*In re Georgetown Steel Co. LLC*), 318 B.R. 313, 327–28 (Bankr. D.S.C. 2004) (holding that the Fourth Circuit applies the conduct test). Moreover, SunTrust itself characterized the Defendants' conduct relating to its Complaint as post-petition conduct and admitted that any claims that arose would not qualify as either a pre-petition claim or an administrative claim.[17] *See* Tr. 44:18–46:8. Therefore, the Court

---

[17]   The transcript of the Court's hearing on April 16, 2008, provides the following:

> THE COURT: All right. Mr. Schultz, before you retire let me ask you this, what exactly is the nature of the award you seek, specifically vis-a-vis the debtor? Is it prepetition claim, postpetition claim? Is it a claim? How does it fit into the overall bankruptcy process?
> MR. SCHULTZ: *Your Honor, it's postpetition conduct by the debtor*. Therefore, it is not a claim. By definition, it is not an administrative -- *it is not an administrative claim*. For the -- the case we -- the Fifth Circuit case we cited says that a postpetition conversion count should be brought as an adversary proceeding against the debtor, not as a claim. When the debtor filed bankruptcy and it acts postpetition, it can commit torts. It can enter into contracts that are enforceable. I cannot -- I can get a judgment in an adversary proceeding against the debtor. *I just can't enforce it against estate* -- estate assets unless relief from stay is obtained to do so. *So the debtor is an actor like any other actor for its postpetition conduct.* There is nothing prohibiting --
> THE COURT: Well, does that affect the "arising in" jurisdiction, though, as to the debtor? If it cannot ultimately -- or perhaps if you can't -- if it doesn't have to be dealt with -- I presume what you're saying is it doesn't have to be dealt with in the bankruptcy plan process. Does it have a sufficient nexus with that process that it's "arising in" jurisdiction?
> MR. SCHULTZ: Yes, sir, and I think the *Grausz* Fourth Circuit case makes that pretty clear because that case was a legal malpractice case by the debtor against his counsel, and my recollection of that case is that the legal malpractice occurred during the bankruptcy case, so it would be postpetition conduct, is my recollection of the case.
> THE COURT: All right. So --
> MR. SCHULTZ: *So you would have postpetition conduct*, and the Fourth Circuit had no problem saying that that arose in the bankruptcy case. *The -- here the conduct, the representations, September, November -- I don't know if I stated any that were in October -- they all occurred postpetition*. I think this case is all on fours with the Grausz case.

finds that the Defendants' conduct alleged in SunTrust's Complaint cannot give rise to a pre-petition claim.

While SunTrust's potential claims cannot be categorized as a pre-petition claim, if the claims asserted in SunTrust's Complaint qualify as administrative expenses, they conceivably could have an effect on the Debtor's estate and could create a sufficient basis for the Court to establish "related to" subject matter jurisdiction.  Whether a claim qualifies as an administrative claim is "determined on a case-by-case basis. . . ." *Devan v. Simon Debartolo Group, L.P.* (*In re Merry-Go-Round Enters., Inc.*), 180 F.3d 149, 156 (4th Cir. 1998) (citing *Ford Motor Credit Co. v. Dobbins*, 35 F.3d 860, 869 (4th Cir. 1994)).  Section 503 of the Bankruptcy Code states that the court shall allow "the actual, necessary costs and expenses preserving the estate. . . ." 11 U.S.C. § 503(b)(1)(A) (2008).  "Since there is a general presumption in bankruptcy that all of a debtor's limited resources will be equally distributed among creditors, § 503 must be narrowly construed." *Devan*, 180 F.3d at 157. The Fourth Circuit established a two-part test to determine whether a claim qualifies as an administrative expense: "(1) the claim must arise out of a post-petition transaction between the creditor and the debtor-in-possession (or trustee) and (2) the consideration supporting the claimant's right to payment must be supplied to and beneficial to the debtor-in-possession in the operation of the business." *Id.* (quoting *Stewart Foods, Inc. v. Broecker* (*In re Stewart Foods, Inc.*), 64 F.3d 141, 145 n.2 (4th Cir. 1995)); *Tidewater Fin. Co. v. Hinson* (*In re Hinson*), 57 F. App'x 136, 138 (4th Cir. 2003) (per curiam).

As established in the discussion above, the representations and SunTrust Settlement occurred after the filing of the Debtor's bankruptcy petition. *See Black's Law Dictionary* (8th ed.

---

Tr. 44:18–46:8 (emphasis added).  As decided in section II.b.2.ii above, "arising in" jurisdiction is unavailable for SunTrust's claims.  The Fifth Circuit case referred to by SunTrust's counsel, *Village Mobile Homes, Inc. v. First Gibraltar Bank FSB* (*In re Village Mobile Homes, Inc.*), 947 F.2d 1282 (5th Cir. 1991), does not discuss bankruptcy court jurisdiction, and therefore, is not germane to the Court's jurisdictional analysis.

2004) (defining "transaction" to include "[a]ny activity involving two or more persons."). Therefore, the first prong of the administrative expense test is met.

At first blush, it appears that it would be impossible for SunTrust's claims to meet the second prong of the administrative expense test.  The Supreme Court, however, created an exception in *Reading Co. v. Brown*, 391 U.S. 471 (1969), whereby post-petition torts committed by the debtor-in-possession while acting in the furtherance of the operation of the business satisfy the second or "burden" prong of the administrative expense test, and claims for such torts may be accorded priority as an administrative expense. *See id.* at 477–85; *Pa. Dep't of Envtl. Res. v. Tri-State Clinical Labs, Inc*., 178 F.3d 685, 691 (3d Cir. 1999) ("The Supreme Court held that that the tort judgment was entitled to priority as an administrative expense under § 64a(1) of the Bankruptcy Act, even though the expense was not technically a cost of preserving the estate.");  *Ala. Surface Mining Comm. v. N.P. Mining Co.*, 963 F.2d 1449, 1453 (11th Cir. 1992) ("*Reading* . . . held that tort claims against a bankruptcy trustee were payable as administrative expenses even though they were not beneficial to the estate."); *Kapernekas v. Continental Airlines, Inc*. (*In re Continental Airlines, Inc.*), 148 B.R. 207, 213 (D. Del. 1992) (stating that *Reading* held that certain costs may be treated as administrative expenses if those costs were incurred as a result of the debtor committing a post-petition tort); 4-503 *Collier on Bankruptcy* ¶ 503-06[2][c][i]–[iv] (15th ed. 2008).

The *Reading* exception is grounded in the notion that fairness to all parties having claims against the debtor requires those holding claims resulting from the debtor's tort committed during the ongoing operation of the debtor should recover ahead of those—the debtor's creditors—for whom the debtor's continued operation was being conducted. *Reading*, 391 U.S. at 478 ("[The Debtor's] existing creditors hope that by partial or complete postponement of their

claims they will, through successful rehabilitation, eventually recover from the debtor either in full or in larger proportion than they would in immediate bankruptcy."). The tort claimant, however, "had an insolvent business thrust upon it by operation of law." *Id.*; *see also Tri-State Clinical Labs*, 178 F.3d at 691 ("The [Reading] Court concluded that it simply is not fair to deny innocent victims compensation for injuries they would not have incurred had the law not allowed the debtor to continue operating its business."); *Amplex Corp. v. Gonzales* (*In re Furr's Supermarkets, Inc.*), Case No. NM-06-099, 2007 Bankr. LEXIS 489, at *8 (B.A.P. 10th Cir. Feb. 22, 2007) ("Based on *Reading*, a number of courts have allowed certain claims to be treated as administrative expenses, even though they involve no discernible benefit to the bankruptcy estate, which are limited to instances where fundamental fairness requires that the claimant's rights take precedence over the rights of other creditors."); *Kapernekas*, 148 B.R. at 216 ("[S]hould the [debtor's] business cause harm during this period in which it is operating under the protection of the code for the benefit of creditors, fairness dictates that the claims of those to whom it causes harm must have priority over those for whose benefit it was operating."); 4-503 *Collier on Bankruptcy* at ¶ 503-06[2][c][i] (stating that the *Reading* exception is typically applied in instances where fundamental fairness requires that a claim should be treated with administrative priority.).

The facts in the case before the Court weigh against applying the *Reading* exception. As a preliminary matter, the *Reading* exception could only apply to SunTrust's fraud in the inducement claims, as only those claims sound in tort. However, this is a Chapter 11 case with a liquidating plan, and at the time of SunTrust's alleged injuries, Baseline Sports did not operate as a functioning business, and it did not anticipate reorganizing and continuing as a going concern. The Court did not enter an order permitting Baseline Sports to use its cash collateral. The Debtor

submitted a Plan of Liquidation rather than a plan designed for the continued operation of the business.  Thus, the reasoning of *Reading* that fairness dictates that a party injured by a business that by "operation of law" continues to operate during the reorganization process should be entitled to full recovery of its claim is inapplicable in this case. Baseline Sports's sought to wind down its operations during this bankruptcy proceeding rather than continue those operations. *See In re Hemingway Transp*., 954 F.2d 1, 5 n.5 (1st Cir. 1992) (commenting that applying the *Reading* exception in a "non-operating liquidation proceeding appears extremely problematic."); *In re Unidigital*, 262 B.R. 283, 290 (Bankr. D. Del. 2001) (declining to apply the *Reading* exception in the case of a non-operating business).

Moreover, SunTrust is not an "innocent third party" for whom the *Reading* exception was created.  SunTrust was the largest secured creditor in this case. To the extent that Baseline Sports's Chapter 11 case continued, it was for SunTrust's benefit, as a pre-petition secured creditor, until it received relief to exercise its rights in the Debtor's collateral.  The fact that SunTrust may have a claim based on the Debtor's post-petition activities does not alter SunTrust's status as a pre-petition secured creditor; fundamental fairness does not dictate that SunTrust's claim should fall within the ambit of the *Reading* exception. *See In re Hull*, 344 B.R. 466, 469 (Bankr. W.D. Va. 2004) (declining to apply the *Reading* exception to a creditor's claim who "is not an innocent third party whose property has been damaged by the reorganization proceeding, but rather a pre-petition creditor for whose benefit in part the attempted reorganization was being conducted."); *In re Motel Invs.*, 307 B.R. 536, 539 (Bankr. W.D. Va. 2004) (distinguishing *Reading* and declining to apply the exception); *In re Unidigital*, 262 B.R. at 290 (finding that *Reading* should not apply to a potential tort that did not arise from the operation of the debtor's business). Finally, SunTrust's counsel stated at the hearing before the

Court that any claims that SunTrust may have would not be administrative claims. *See supra* note 16; *see also Devan v. Simon Debartolo Group, L.P.* (*In re Merry-Go-Round Enters., Inc.*), 180 F.3d 149, 157 (4th Cir. 1998) (citing *Ford Motor Credit Co. v. Dobbins*, 35 F.3d 860, 865 (4th Cir. 1994)) (stating that the party seeking an administrative claim has the burden of proving that it meets the requirements of § 503). Accordingly, the Court declines to treat SunTrust's potential claims as administrative expenses.

As SunTrust's potential claims are neither pre-petition claims nor administrative claims, such claims could not be brought against the bankruptcy estate, and therefore cannot affect the administration of the Debtor's bankruptcy estate. SunTrust has put forth no argument regarding how its post-petition non-administrative claims against the Debtor and other third parties could possibly affect the Debtor's bankruptcy estate. SunTrust, as permitted by Virginia state law, by electing to sue for damages, rather than seeking to rescind the SunTrust Settlement, has essentially elected itself out of this Court's subject matter jurisdiction. By electing to keep the SunTrust Settlement in place, SunTrust retains the $190,000 in cash paid over to it and the $130,000 note executed by Baseline Licensing Group, Barnes, and Roberson. Any claims that SunTrust could have against the Debtor are post-petition claims that cannot be exercised against the bankruptcy estate, only the defunct asset-less post-petition Debtor. Presumably, the true targets of SunTrust's suit are Baseline Licensing Group, Barnes, and Roberson, against whom SunTrust may actually recover should it be successful on its claims. By merely adding the defunct Debtor as a party to its suit, however, SunTrust cannot bootstrap its way into bankruptcy court jurisdiction. Accordingly, the Court is without "related to" jurisdiction to hear the causes of action in SunTrust's Complaint.[18]

---

[18] At this time, the Court takes no position as to whether SunTrust must first seek relief from the automatic stay should it decide to pursue this litigation in another forum.

### III. Conclusion

This Court is without subject matter jurisdiction to adjudicate the merits of the claims of SunTrust against the Defendants under the Complaint. Accordingly, SunTrust's Complaint should be dismissed under Federal Rules of Civil Procedure 12(b)(1) and 12(h)(3), as incorporated by Federal Rule of Bankruptcy Procedure 7012.

A separate order will be entered.

The Clerk is directed to forward a copy of this Memorandum Opinion to Donald C. Schultz, counsel for SunTrust Bank; Gary L. Roberson; David G. Barnes; Karen M. Crowley, counsel for Baseline Sports, Inc.; and Peter G. Zemanian, counsel for Baseline Licensing Group, LLC.

**Entered this _1ST_ day of August, 2008 at Norfolk in the Eastern District of Virginia.**

STEPHEN C. ST. JOHN
United States Bankruptcy Judge